IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

**SANCHO MCKENZIE**                                                        **PETITIONER**

**v.**                                              **CIVIL ACTION NO. 5:19-cv-139-KS-MTP**

**WARDEN SHAWN R. GILLIS**                                    **RESPONDENT**

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on Petitioner Sancho McKenzie's Petition for Writ of Habeas Corpus [1] pursuant to 28 U.S.C. § 2241. Having considered the parties' submissions and the applicable law, the undersigned recommends that the Court grant the Petition [1] and order that Petitioner be deported or released from Immigration and Customs Enforcement ("ICE") custody within thirty days of a favorable ruling on the Petition [1].

## BACKGROUND

On March 16, 2000, Petitioner entered the United States as a non-immigrant visitor, authorized to remain in the United States until September 15, 2000. *See* [7-1]. Petitioner, however, remained in the United States beyond September 15, 2000, in violation of the Immigration and Nationality Act. *Id.* On December 14, 2018, Petitioner was taken into ICE custody, and on February 15, 2019, an Immigration Judge ordered Petitioner removed from the United States to the United Kingdom. *Id.*

On December 10, 2019, Petitioner filed the instant Petition, arguing that his extended detention in ICE custody is unlawful. Petitioner seeks release from immigration custody. On February 5, 2020, Respondent filed a Response [7], arguing that the Petition should be denied because Petitioner's removal is imminent. On June 25, 2020, the Court ordered Respondent to

provide additional information, and on July 10, 2020, Respondent did so. *See* Order [17]; Response [18].

## ANALYSIS

The controlling statute in this case, 8 U.S.C. § 1231(a)(1)(A), provides that the Attorney General has ninety days after an order of removal becomes final to deport the alien. The Supreme Court has held that detention of aliens beyond this ninety-day period is acceptable up to six months. *See Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). This, however, does not mean that every alien not removed after six months must be released. "After this 6-month period, once the alien provides good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut the showing." *Id*. "[A]n alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id*. "[D]etermining what the 'reasonably foreseeable future' really is, is a factual determination to be undertaken by the habeas court looking into the circumstance and detention length of each individual petitioner." *Kane v. Mukasey*, 2008 WL 11393137, at *4 (S.D. Tex. Aug. 21, 2008)*, superseded by Kane v. Mukasey*, 2008 WL 11393094 (S.D. Tex. Sep. 12, 2008) (finding habeas petition was moot after petitioner was deported).

"The alien bears the initial burden of proof in showing that no such likelihood of removal exists." *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006). This burden does not require the alien to show that deportation will prove "impossible" or "show the absence of *any* prospect of removal—no matter how unlikely or unforeseeable . . . ." *Zadvydas*, 533 U.S. at 702. "In order to shift the burden to the Government, an alien must demonstrate that the circumstances of his status or the existence of the particular individual barriers to his repatriation to his country of

origin are such that there is no significant likelihood of removal in the foreseeable future." *Galtogbah v. Sessions*, 2019 WL 3766280, at *2 (W.D. La. June 18, 2019). However, "an alien's claim must be supported by more than mere speculation and conjecture." *Id*. (internal quotations and citation omitted).

Once the alien has met his initial burden, the burden shifts to the Government to "respond with evidence sufficient to rebut the alien's showing." *Zadvydas*, 533 U.S. at 701. "[F]or detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id*.

Petitioner points out that he has been in ICE custody since December of 2018 and that his removal order was issued on February 15, 2019. *See* [1] at 4. Thus, the length of Petitioner's confinement is well in excess of the six-month presumptively reasonable period prescribed by the Supreme Court in *Zadvydas*. Petitioner asserts that he has cooperated fully with ICE and the removal efforts. *Id*. at 6. According to Petitioner, his removal is not likely in the foreseeable future because there is "little chance" that travel documents will be issued due to the lack of identifying documents from the United Kingdom. *Id*. at 11.

As explained below, the record supports Petitioner's assertion, and Petitioner has provided good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. Thus, Petitioner has met his initial burden under *Zadvydas*. *See Hassoun v. Session*, 2019 WL 78984, at *4 (W.D.N.Y. Jan. 2, 2019) (finding that petitioner met his burden when he had shown that the countries with which he had an affiliation would not accept him).

The burden now shifts to the Government to rebut Petitioner's showing. Respondent counters that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future. *See* Response [7]. Respondent's argument relies upon a Declaration [7-1] by

William Morrow, an ICE Deporation Officer.  In the declaration, Morrow states that in April and June of 2019, ICE requested travel documents from the British Consulate for Petitioner's removal to the United Kingdom. *See* [7-1] at 1.  According to Morrow, the British Consulate notified ICE that it needed Petitioner's original birth certificate, and on November 14, 2019, ICE requested Petitioner's birth certificate from Turks and Caicos—a British territory. *Id*. at 2.  Morrow states that the British Consulate received the birth certificate on December 12, 2019, but the British Consulate declined to issue Petitioner a passport because he is not a citizen of the United Kingdom, but a "belonger" to the Turks and Caicos Islands. *Id*. at 3.  According to Morrow, on January 22, 2020, ICE contacted the Director of Immigration for Turks and Caicos for assistance in receiving a travel document for Petitioner. *Id*.

After filing the Response [7] and Declaration [7-1] on February 5, 2020, Respondent did not present any information regarding a response from the Director of Immigration for Turks and Caicos.  Thus, on June 25, 2020, the Court directed Respondent to provide the additional information. *See* Order [17].  Respondent then submitted a Declaration [18-1] by Jose N. Benavidez, an ICE Supervisory Detention and Deportation Officer.  According to Benavidez, on March 19, 2020, the government of Turks and Caicos advised that it would provide a conclusive response regarding Petitioner's status as a "belonger," but Turks and Caicos did not provide the response. *See* [18-1] at 1.

Nevertheless, Benavidez states that it is his "belief that Petitioner's removal to Turks and Caicos is imminent." *Id*. at 2.  Benavidez, however, also states that "[i]f Petitioner cooperates in the search for an alternate country for removal that will receive him, [ICE] can request a travel document and effectuate his removal from the United States to that country." *Id*.

Petitioner has been in ICE custody awaiting removal since February 15, 2019. Respondent does not dispute that Petitioner has been cooperative in efforts to secure travel documents. Despite Petitioner's cooperation, the United Kingdom refused to issue Petitioner travel documents because he is a "belonger" to Turks and Caicos. Additionally, ICE sought assistance from Turks and Caicos in securing travel documents for Petitioner more than six months ago, but no assistance has been offered. Respondent offers nothing—other than unsubstantiated belief—to suggest that Turks and Caicos, or any other country, will issue travel documents for Petitioner.

Six months have passed since Morrow stated that Petitioner's removal was imminent. Yet, Petitioner remains in ICE custody,[1] and nothing in Benavidez's declaration demonstrates that Petitioner will be removed anytime soon. Neither ICE's *belief* that Petitioner will be removed nor the information provided by Respondent satisfy the government's burden to rebut Petitioner's showing that he will not be removed in the foreseeable future.

"[A] theoretical possibility of eventually being removed does not satisfy the government's burden once the removal period has expired and the petitioner establishes good reason to believe his removal is not significantly likely in the reasonably foreseeable future." *Kane*, 2008 WL 11393137 at *5; *see also Andreasyan v. Gonzalez*, 446 F. Supp. 2d 1186, 1189-90 (W.D. Wash. 2006) (finding that respondent had not rebutted petitioner's showing that he would not be removed when respondent repeatedly asked for "a few more weeks" to obtain travel documents). "[I]f [ICE] has no idea of when it might reasonably expect [Petitioner] to be repatriated, this Court certainly cannot conclude that his removal is likely to occur— or even that

---

[1] *See* https://locator.ice.gov/odls/#/index (lasted visited July 28, 2020).

5

it *might* occur— in the reasonably foreseeable future." *Singh v. Whitaker*, 362 F. Supp. 3d 93, 102 (W.D.N.Y. 2019).

With no significant likelihood of removal in the foreseeable future, Petitioner's detention is now unreasonable. *See Ali v. Dep't of Homeland Sec.*, 2020 WL 1666074 (S.D. Tex. Apr. 2, 2020) (granting writ when petitioner could not be removed due to travel restrictions to Pakistan). After nearly eighteen months of detention, "Petitioner's removal need not necessarily be imminent, but it cannot be speculative." *Hassoun*, 2019 WL 78984, at *6.

As Respondent has not met his burden to show that continued detention is authorized, Petitioner should be deported or released. "[T]he alien's release may and should be conditioned on any of the various forms of release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." *Zadvydas*, 533 U.S. at 700; *see also Okwilagwe v. I.N.S.*, 2002 WL 356758 (N.D. Tex. Mar. 1, 2002) (granting writ of habeas corpus but setting conditions of alien's release).

## RECOMMENDATION

For the reasons set forth above, the undersigned recommends that:

1. The Petition [1] be GRANTED and

2. The Court order Immigration & Customs Enforcement to deport Petitioner or release him subject to appropriate conditions of supervision, to be determined by Immigration & Customs Enforcement, within thirty days of the Court's order granting the Petition [1].

## RIGHT TO OBJECT

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge, and the opposing party. The district judge at the time may accept, reject, or modify in whole or in part, the recommendations

of the magistrate judge or may receive further evidence or recommit the matter to this Court with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except on grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

      THIS the 30th day of July, 2020.

                                                 s/ Michael T. Parker
                                                 United States Magistrate Judge